

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 NOV 22 P 4:23

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

BY _____ DEPUTY

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney*<br><br>*Peter M. Nothstein*<br>*Assistant United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland*<br>*21201* | *DIRECT: 410-209-4916*<br>*MAIN: 410- 209-4800*<br>*FAX: 410-962-3124*<br>*TTY/TDD: 410-962-4462*<br>*Peter.Nothstein@usdoj.gov* |

November 14, 2011

Richard C. Bittner, Esq.
Law Office of Richard C. Bittner
7 Central Avenue, Suite 201
Glen Burnie, Maryland 21061

Re:   *United States v. Jose Ramirez*, Crim. No. RDB-10-0157

Dear Mr. Bittner:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 16, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, charging him with conspiracy to interfere with commerce through robbery, in violation of 18 U.S.C. § 1951. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.      there was an agreement among others to interfere with interstate commerce through robbery; and

b.      the Defendant knowingly joined that conspiracy.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: twenty years of imprisonment, a maximum term of supervised release of three years, and maximum fine of $250,000.

4.      In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.

5.      This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

6.      The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

7.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.   That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.    The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify.  If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.    If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a

conviction on immigration status.  Defendant nevertheless affirms that he/she
wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

8.      The Defendant understands that the Court will determine a sentencing guidelines
range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing
Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e))
and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will
impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account
the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

9.      This Office and the Defendant understand, agree and stipulate to the Statement of
Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable
doubt, and to the following applicable sentencing guidelines factors.  The parties agree and
stipulate that the nature of the count of conviction results in an offense level 20, pursuant to
U.S.S.G. § 2B3.1.

10.     This Office does not oppose a two-level reduction in the Defendant's adjusted
offense level, based upon the Defendant's apparent prompt recognition and affirmative
acceptance of personal responsibility for his criminal conduct, pursuant to U.S.S.G. § 3E1.1(a).

11.     This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an
additional one-level decrease in recognition of the Defendant's timely notification of his
intention to plead guilty.   This Office may oppose any adjustment for acceptance of
responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b)
denies involvement in the offense; (c) gives conflicting statements about his involvement in the
offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e)
obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct
between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his
plea of guilty.

12.     **The parties stipulate and agree pursuant to Federal Rule of Criminal
Procedure 11(c)(1)(C) that a sentence of six months is the appropriate disposition of this
case.**  The parties are free to base the argument on  any offense characteristics, sentencing
guidelines factors, departures and/or adjustments set forth in Chapters 2, 3 or 4 of the United
States Sentencing Guidelines or 18 U.S.C. § 3553.

13.     This agreement does not affect the Court's discretion to impose any lawful term
of supervised release or fine or to set any lawful conditions of probation or supervised release.

In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, she will be afforded the opportunity to withdraw her plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

14.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

## **Obligations of the United States Attorney's Office**

15.     At the time of sentencing, this Office will recommend a sentence of six months but will not recommend a fine or restitution. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

16.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## **Waiver of Appeal**

17.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:



    a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.     the **Defendant reserves the right** to appeal any term of imprisonment to the extent that it **exceeds 6 months'** imprisonment; and

      ii.    this Office reserves the right to appeal any term of imprisonment to the extent that it is below 6 months' imprisonment.

18.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

19.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

20.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (a) engages in conduct after the date of this agreement which could justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (b) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (c) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Consent to Removal from the United States

21.     The Defendant acknowledges that he is subject to removal from the United States and agrees not to contest any removal proceedings brought by the Department of Homeland Security (DHS). If the DHS files a Notice to Appear or other administrative document requiring the Defendant to show cause why he should not be removed, the Defendant agrees to request an expedited removal hearing and to consent to removal. The Defendant acknowledges that by consenting to removal, he will be removed from the United States expeditiously upon completion of his term of incarceration. The Defendant knowingly waives any and all rights to appeal, reopen, reconsider or otherwise challenge his removal.

22.     The Defendant agrees to waive any rights he may have to apply for any form of relief or protection from removal, deportation or exclusion under the Immigration and Nationality Act (as amended) and related federal regulations.   The rights the Defendant is waiving include, but are not limited to the ability to apply for voluntary departure, asylum, withholding of deportation or removal, cancellation of removal, suspension of deportation, adjustment of status and protection under the Convention Against Torture.   As part of this agreement, the Defendant specifically acknowledges and states that he has not been persecuted or tortured in, and has no present fear of persecution or torture in the Dominican Republic on account of race, religion, nationality, political opinion or   membership in a particular social or political group.

23.     The Defendant agrees that upon entry of this plea agreement, the defendant abandons any and all applications for relief from deportation, removal or exclusion he may have filed and agreed not to file or prosecute any application for relief from removal, deportation or exclusion before any federal court, immigration court, Board of Immigration Appeals or DHS prior to the defendant's removal from the United States.

24.     The defendant agrees to assist the DHS in his removal.   Specifically, the defendant agrees to assist the DHS in procuring travel or other documents necessary for the Defendant's removal; to cooperate with representatives of the country or countries to which the Defendant's removal is directed; and to execute promptly those documents which are needed to effect the Defendant's removal. The Defendant agrees that his failure or refusal to cooperate in his removal shall constitute a material breach of this agreement and may subject the Defendant to additional criminal penalties.

## Court Not a Party

25.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court.   In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing.   The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence.   Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.   The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above.   The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement.   The Defendant understands that neither the prosecutor, his counsel, nor

the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

26.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,
Rod J. Rosenstein
United States Attorney

By:
Peter M. Nothstein
Assistant United States Attorney

I have read a Spanish translation this agreement, or have had it read to me in Spanish, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11-11-16
Date

Jose Ramirez

I am Mr. Ramirez's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/16/11
Date

Richard C. Bittner, Esq.

**ATTACHMENT A**

**Statement of Facts**

*The parties agree and stipulate that the government would have proven the following facts, had this case gone to trial:*

In December of 2009, a confidential source (hereafter referred to as "CS") informed law enforcement agents that he/she had met an individual identified only as "Negro" (now known to be the defendant, Angel Ramirez, but referred to herein as "Negro"). CS met with "Negro" and they discussed the sale of narcotics.

"Negro" told the CS that he had a source of supply for drugs available through his employer. "Negro" also stated that his employer received cocaine straight from Colombia through Mexico. "Negro" stated that this cocaine is received in shipments of approximately 100 kilograms at a time. Further, "Negro" informed the CS that he currently had 47 kilograms of cocaine. During a subsequent controlled phone call between the CS and "Negro", "Negro" told the CS that "Negro" had 17 kilograms left to sell the CS (meaning that "Negro" had 17 kilograms left of the previously referenced 47 kilogram quantity). In truth, "Negro" did not have a source of supply able to provide 100 kilograms.

"Negro" contacted Jose Rivera and an individual known only as "Roboco" who lived in New York to see if they knew of anyone who could provide that much cocaine, but both Rivera and Roboco did not. Nevertheless, "Negro" set up a meeting with CS to ostensibly sell CS 17 kilograms of cocaine on December 7, 2009. At this meeting, CS showed "Negro" a backpack containing what CS represented to be $500,000 in cash, but "Negro" cancelled the transaction because he was unable to provide the requested narcotics.

A few weeks later, when it was clear that Rivera, Roboco, and "Negro" would be unable to find the large amounts of cocaine that CS wanted, "Negro", Rivera, and Roboco agreed to make up fake cocaine to sell to the CS to induce CS to come to them with the money, and then steal the money from CS or rob CS of the money. In order to further this plan, Roboco was to supply individuals to affix a magnetic GPS tracking device to CS's car so that these individuals could follow the CS to his home to either steal the money or rob the CS of the money. One of these individuals was defendant Jose Ramirez.

On March 20, 2010, "Negro" and Rivera engaged in a phone conversation intercepted by federal authorities pursuant to a Title III wiretap wherein they discussed placing a GPS tracking device on CS's car. They also discussed the layout of a warehouse where the GPS device was to be placed on CS's car. This conversation was in furtherance of the planned robbery.

On or about March 22, 2010, telephone conversations between Rivera, Roboco, and "Negro" were again intercepted, during which Roboco and Rivera stated that they were going to

come to Maryland that evening. Additionally, the three discussed "Negro" contacting CS in order to arrange a meeting with CS.

The three agreed that "Negro" would arrange a meeting where CS would not bring any money, so that "Negro" and the person or persons arranged by Roboco who was/were going to attach the GPS to CS's car would not have to bring fake cocaine. This meeting would allow that person or persons to place the magnetic GPS tracker on CS's car and follow him home at a later time. "Negro" attempted to arrange a meeting with CS on March 22, but CS was unable to meet with "Negro" that night. The next day, "Negro" was able to arrange a meeting with CS, to occur at a warehouse in Frederick where "Negro" had previously met with CS. The purpose of the meeting was so that the GPS tracking device could be placed on CS's car, and Negro, Ramirez and the others could find CS's home at a later time to steal CS's money.

Rivera and Roboco returned to New York before the meeting, but at the arranged time, "Negro" drove to Frederick to meet CS. Also in the car, which was owned by Fanny Then, Ramirez's wife, were defendant Jose Ramirez, Thomas Mendez and Jose Dario Perez-Diaz. The car was observed by authorities driving to the arranged meeting place. Upon arrival in the vicinity of the planned meeting place, law enforcement arrested all four individuals, as well as another individual known only as "HIDO," who was also traveling to the warehouse in a separate vehicle. In the glove compartment of the car with "Negro," defendant Ramirez, Mendez, and Perez-Diaz was a GPS tracker taped to a large magnet of the kind discussed in the phone calls noted above.

Upon arrest, Ramirez informed the law enforcement officers that he was "Luis Vera-Gonzalez," and presented an identification card with that name. He also stated that he was an American citizen from Puerto Rico. At his detention hearing on March 29, 2010, Ramirez was released to the third-party custody of Fanny Then, under the condition that he wear an electronic location monitoring device, reside with Ms. Then, and not leave the state of New York. On May 5, 2010, Ms. Then informed pretrial services that Mr. Ramirez had cut off his monitoring device and fled the apartment. In June, 2011, Ramirez was arrested and in Canada as an illegal alien. He was eventually deported to the United States.

Peter M. Nothstein
Assistant United States Attorney

I have read a Spanish translation of this Statement of Facts, or have had it read to me in Spanish, and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  I do not wish to change any part of it.

11-11-16
Date

Jose Ramirez

I am Mr. Ramirez's attorney.  I have carefully reviewed every part of this Statement of Facts with him.  To my knowledge, his decision to sign it is a voluntary one.

Date

Richard C. Bittner, Esq.

*United States v. Jose Ramirez*, Crim. No. RDB-10-0157